# 11-126-cv

## United States Court of Appeals

### *for the*

## Second Circuit

_____

TERRA FIRMA INVESTMENTS (GP) 2 LIMITED, TERRA FIRMA INVESTMENTS (GP) 3 LIMITED

*Plaintiffs-Appellants,*

– v. –

CITIGROUP INC., CITIGROUP GLOBAL MARKETS LIMITED, CITIGROUP GLOBAL MARKETS INC., CITIBANK, N.A.,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF DEFENDANTS–APPELLEES

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees certify that Citigroup Inc. is a publicly traded corporation that has no parent corporation. No publicly held corporation owns 10% or more of its stock.

Citigroup Global Markets Limited is indirectly wholly owned by Citigroup Inc.

Citigroup Global Markets Inc. is indirectly wholly owned by Citigroup Inc.

Citibank, N.A. is indirectly wholly owned by Citigroup Inc.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...............................................C

TABLE OF AUTHORITIES ......................................................................... v

PRELIMINARY STATEMENT ..................................................................... 1

COUNTERSTATEMENT OF THE ISSUES PRESENTED......................... 5

COUNTERSTATEMENT OF THE CASE ................................................... 7

COUNTERSTATEMENT OF THE FACTS ................................................. 9

    A.    The Parties.................................................................... 9

        1.    Terra Firma ..................................................... 9

        2.    Citi.................................................................. 10

    B.    Terra Firma Targets EMI ............................................ 10

    C.    Terra Firma Prepares a Bid for EMI ......................... 12

    D.    Cerberus Withdraws from the EMI Auction............................ 15

    E.    Terra Firma Bids for EMI ........................................... 15

    F.    The Three Conversations Comprising the Alleged Fraud ....... 16

    G.    Terra Firma Completes Its Acquisition of EMI....................... 19

    H.    Terra Firma Learns that Cerberus Did Not Bid ....................... 19

SUMMARY OF ARGUMENT ..................................................................... 21

ARGUMENT ................................................................................................. 24

I.    THE DISTRICT COURT CORRECTLY INSTRUCTED  THE
    JURY ON RELIANCE ........................................................................ 24

    A.    Terra Firma Was Not Entitled to an Instruction on the
        Presumption of Reliance ........................................... 24

B.    The Benefit/Detriment Instruction Was Not a Fundamental Error ................................................................. 35

II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON TERRA FIRMA'S NEGLIGENT MISREPRESENTATION CLAIM ........................... 40

A.    The Project Mulberry Agreement Forecloses Terra Firma's Negligent Misrepresentation Claim ........................... 40

B.    Plaintiffs Failed to Show that Citi Owed Plaintiffs a Duty of Care ....................................................... 44

III.    THE DISTRICT COURT PROPERLY GRANTED CITI JUDGMENT AS A MATTER OF LAW ON TERRA FIRMA'S FRAUDULENT CONCEALMENT CLAIM .................. 46

IV.    THE DISTRICT COURT'S EVIDENTIARY  RULINGS WERE CORRECT ........................................................ 53

A.    The District Court Properly Excluded Slattery's May 16 Notes Under Rule 403 ........................................... 54

B.    The District Court Properly Excluded Nicoli's Phone Records Under Rule 403 ........................................ 56

C.    The District Court Properly Excluded Terra Firma's Speculative and Methodologically Unsound Expert Testimony ................................................................. 58

CONCLUSION ........................................................ 60

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (D.C. Cir. 1992) ...................................................................30

*Abu Dhabi Inv. Co. v. H. Clarkson & Co. Ltd.*,
  [2007] EWHC 1267 (Comm) ....................................................................53

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ..................................................................................33

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores Inc.*, 54 F.3d 69 (2d Cir. 1995) .............................................................43

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................50

*In re Associated Bicycle Serv., Inc.*,
  128 B.R. 436 (Bankr. N.D. Ind. 1990) .......................................................34

*Barton v. County Natwest*,
  [1999] Lloyd's Reports 408 .................................................................28, 29

*Basic, Inc. v. Levinson*,
  485 U.S. 244 (1988) ............................................................................33, 34

*Belfairs Mgmt. Ltd. v. Sutherland*,
  [2010] EWHC (Ch) 2276 ..........................................................................46

*Berner v. British Commonw. Pac. Airlines, Ltd.*,
  346 F.2d 532 (2d Cir. 1965) ......................................................................58

*Black v. Finantra Capital, Inc.*,
  418 F.3d 203 (2d Cir. 2005) ......................................................................33

*Bradford Third Equitable Benefit Bldg. Soc'y v. Borders*,
  [1941] 2 All ER 205 ..................................................................................37

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990) ....................................................................51

*Dadourian Group Int'l Inc. v. Simms*,
    [2006] EWHC 2973 (Ch) .............................................................25, 28, 29

*Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.*,
    327 Fed. Appx. 860 (11th Cir. 2009) ...........................................35

*Derry v. Peek*,
    [1889] 14 App. Cas. 337 ...............................................................37

*Dick v. N.Y. Life Ins. Co.*,
    359 U.S. 437 (1959) ..............................................................32, 33

*duPont v. Brady*,
    828 F.2d 75 (2d Cir. 1987) ...........................................................33

*In re G-I Holdings, Inc.*,
    385 F.3d 313 (3d Cir. 2004) .........................................................30

*Girden v. Sandals Int'l*,
    262 F.3d 195 (2d Cir. 2001) .........................................................50

*Goldhirsh Group, Inc. v. Alpert*,
    107 F.3d 105 (2d Cir. 1997) ....................................................50, 57

*Gordon v. N.Y. City Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000) .........................................................31

*Grancio v. De Vecchio*,
    572 F. Supp. 2d 299 (E.D.N.Y. 2008)...........................................58

*Innomed Labs, LLC v. ALZA Corporation*,
    368 F.3d 148 (2d Cir. 2004) ....................................................36, 39

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007) ....................................................30, 32

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) .....................................................................58

*Li v. Canarozzi*,
    142 F.3d 83 (2d Cir. 1998) ...........................................................54

*Manley v. AmBase Corp.*,
    337 F.3d 237 (2d Cir. 2003) ........................................................................57

*Otal Invs. Ltd. v. M.V. Clary*,
    494 F.3d 40 (2d Cir. 2007) ..........................................................................29

*Pan Atl. Ins. Co. Ltd. v. Pine Top Ins. Co. Ltd.*,
    [1995] 1 AC 501 ..........................................................................................27

*Parabola Investments Ltd. v. Browallia Cal Ltd.*,
    [2010] EWCA Civ 486 .................................................................................59

*S.E.C. v. DiBella*,
    587 F.3d 553 (2d Cir. 2009) ........................................................................36

*Sanders v. N.Y. City Human Res. Admin.*,
    361 F.3d 749 (2d Cir. 2004) ........................................................................31

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999) ........................................................................56

*Scott v. Harris*,
    550 U.S. 372 (2007) ....................................................................................44

*Shade v. Housing Auth. of City of New Haven*,
    251 F.3d 307 (2d Cir. 2001) ........................................................................36

*Sheldrake v. Dir. of Pub. Prosecutions*,
    [2004] UKHL 43 ..........................................................................................25

*Slough Estates plc v. Welwyn Hatsfield Dist. Council*,
    [1996] 2 EGLR 219 .....................................................................................53

*Smith v. Chadwick*,
    [1884] 9 App. Cas. 187..............................................................26, 27, 28, 29

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ....................................................................................54

*St Paul Fire & Marine Ins. Co. (UK) Ltd. v. McConnell Dowell*
    *Constructors Ltd*, [1996] 1 All ER 96....................................................27, 28

*Time, Inc. v. Petersen Publ'g Co. L.L.C.*,
173 F.3d 113 (2d Cir. 1999) ........................................................................34

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
925 F.2d 566 (2d Cir. 1991) ........................................................................50

*United Nat'l Ins. Co. v. Tunnel, Inc.*,
988 F.2d 351 (2d Cir. 1993) ....................................................................50, 52

*United States v. Hendrix*,
542 F.2d 879 (2d Cir. 1976) ........................................................................30

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010) ........................................................................55

*United States v. McCombs*,
30 F.3d 310 (2d Cir. 1994) ........................................................................34

*United States v. Parcel of Prop.*,
337 F.3d 225 (2d Cir. 2003) ........................................................................39

*United States v. Pomponio*,
635 F.2d 293 (4th Cir. 1980) ........................................................................34

*Vermont Plastics, Inc. v. Brine, Inc.*,
79 F.3d 272 (2d Cir. 1996) ........................................................................47

*Watson v. Fort Worth Bank & Trust*,
487 U.S. 977 (1988) ........................................................................30

## STATUTES, RULES, AND OTHER AUTHORITIES

Spencer Bower, Turner & Handley, *Actionable Misrepresentation*
§ 132 (4th ed. 2000) ........................................................................37

*Clerk & Lindsell on Torts* § 18-22 (19th ed. 2006) ................................................46

*Clerk & Lindsell on Torts* § 18-33 (20th ed. 2006) ................................................37

Colin Tapper, *Cross and Tapper on Evidence* (12th ed. 2010) ........................25, 26

Fed. R. Civ. P. 50(a) ........................................................................47

Fed. R. Evid. 301 ...............................................................29, 30, 33, 34

Fed. R. Evid. 301 advisory committee's note...........................................30

Fed. R. Evid. 403 ............................................................................54, 57

11 Lord Mackay of Clashfern, *Halsbury's Law's of England* ¶ 95 (5th
    ed. 2009) ...................................................................................28

31 Lord Mackay of Clashfern, *Halsbury's Law's of England* ¶ 766
    (4th ed. 2003).............................................................................27

1 Michael H. Graham, *Handbook of Federal Evidence* §§ 301:1
    301:12 (6th ed. 2006) .......................................................30, 31, 33

2 *McCormick on Evidence* §§ 336, 344(A) (Kenneth S. Broun et al.
    eds., 6th ed. 2006)...................................................................25, 30

Adrian Keane et al., *The Modern Law of Evidence* (8th ed. 2010) ........................26

## PRELIMINARY STATEMENT

The time has come to put an end to Plaintiffs' false claim that David Wormsley, a respected senior banker employed by Citi, defrauded Terra Firma into making a successful £4 billion bid for EMI, one of the world's leading music companies. Plaintiffs raise no issue that requires this Court to set aside the jury's unanimous verdict dispensing with their fraud claim in a matter of hours following a 13-day trial. Nor have they identified any reversible error in the trial court's summary judgment, Rule 50(a) or evidentiary rulings.

The evidence at trial clearly refuted Terra Firma's assertion that it bid for EMI solely because Wormsley, acting as banker for EMI, dishonestly advised Terra Firma that another private equity firm, Cerberus, intended to bid for EMI, and that Terra Firma needed to bid £2.65 per share on May 21 to win the auction for the company. Although Terra Firma's principal, Guy Hands, testified that Wormsley so advised him in three telephone calls between May 18 and May 20, 2007, the jury did not credit that testimony. That is no wonder, given the overwhelming evidence that Wormsley made no such statements, and Terra Firma made no complaint about Wormsley's purported lies for more than two years after learning that Cerberus had, in fact, not bid at all. Rather, the evidence confirmed what

common sense would suggest:  that Terra Firma placed its bid of £2.65 per share for EMI on the morning of May 21 on the basis of rigorous due diligence and sophisticated financial analysis conducted by experienced investment professionals and advisers, including investment bankers, accountants, lawyers, and music industry experts.  That the jury made quick work of Terra Firma's claim reflected the implausibility of a case premised on the argument that one of the world's most sophisticated private equity firms would invest billions on the basis of three calls with a banker on the other side of the transaction.

Faced with a mountain of evidence supporting the jury's verdict, Terra Firma raises a handful of marginal legal issues.  None has any merit.

Terra Firma objects to the district court's failure to instruct the jury on a rebuttable presumption that Terra Firma relied on the alleged misrepresentations by Wormsley.  But to give the instruction would have been error.  A correct reading of English law entitled Terra Firma to no such instruction once Citi overcame the presumption, as it did, with evidence demonstrating that Terra Firma did not rely on any such misrepresentations.

Terra Firma's attack on the district court's instruction that Terra Firma had to show reliance on the alleged misrepresentations to Citi's

2

benefit and its detriment falls even further short of the mark. Terra Firma lodged no objection to this instruction below, restricting this Court's review to fundamental error. A review of Judge Rakoff's instruction reveals no error at all, much less a fundamental error that misled the jury or rendered its verdict irrational.

Terra Firma's arguments with respect to the claims that the district court dismissed as a matter of law are equally meritless. Judge Rakoff properly granted summary judgment on the negligent misrepresentation claim both because Terra Firma unambiguously released Citi from such liability by contract and because Citi owed no duty of care to Plaintiffs. And the district court's decision not to submit the fraudulent concealment case to the jury was a direct consequence of Terra Firma's failure to advance a claim that would have required it to argue that Wormsley believed his statements concerning Cerberus to be true but failed to correct them when he learned otherwise. The trial court correctly entered judgment as a matter of law on concealment because Terra Firma proceeded from opening through the close of evidence on the opposite theory, that Wormsley lied, the linchpin of its unsuccessful fraudulent misrepresentation claim.

3

Finally, Terra Firma presents no grounds for reversal with respect to the speculative and unreliable damages testimony excluded after extensive briefing and a *Daubert* hearing, or with respect to the prejudicial, multiple hearsay notes and telephone records that Judge Rakoff found to be violative of Rule 403. Each of those rulings fell squarely within the district court's proper exercise of its discretion.

This Court should affirm.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

1.      Whether the district court correctly instructed the jury on the element of reliance by:

(a) instructing the jury that Terra Firma had the burden of proving reliance, and declining to instruct on an evidentiary presumption that dropped out of the case after Citi came forward with evidence to negate the presumption; and

(b) instructing the jury that Terra Firma must prove that Wormsley intended Terra Firma to rely on the alleged misrepresentations "to Citi's benefit and Terra Firma's detriment," an instruction that tracked Terra Firma's theory of fraud and to which Terra Firma made no objection below.

2.      Whether the district court correctly granted summary judgment against Terra Firma's negligent misrepresentation claim because an unambiguous contractual liability waiver precluded liability for negligence and Citi owed no duty of care to Terra Firma.

3.      Whether the district court correctly granted judgment as a matter of law against Terra Firma's fraudulent concealment claim after the close of Terra Firma's case-in-chief, on the ground that no rational juror could find that Terra Firma established the elements of this claim.

4.    Whether the district court abused its discretion by excluding from evidence (i) hearsay notes that, if admitted, would likely be used by the jury for the truth of conversations recounted therein; (ii) telephone records offered only to encourage impermissible speculation; and (iii) expert testimony on lost profit damages that was both speculative and based on flawed methodology.

## COUNTERSTATEMENT OF THE CASE

Proceedings below commenced on December 23, 2009, when Citi removed this case from state court to the Southern District of New York, and concluded on November 4, 2010, when the jury unanimously found in Citi's favor on Terra Firma's claim of fraudulent misrepresentation. On the basis of the jury's verdict, the district court entered judgment against Terra Firma on December 9, 2010.

Terra Firma initially pled four claims: (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) fraudulent concealment, and (4) tortious interference with prospective economic advantage. (A83-A87.)[1] The trial court granted summary judgment on Terra Firma's claims for negligent misrepresentation and tortious interference; Terra Firma is appealing only the dismissal of the negligence claim.

Trial commenced on October 18, 2010, on the two fraud claims. At the close of Terra Firma's case, the district court granted Citi's motion

---

[1] Citations in the form of "A__" refer to pages in the Joint Appendix. Citations in the form of "SPA __" refer to pages in the Special Appendix. Citations in the form of "CA__" refer to pages in the Confidential Appendix.

English law authorities not available in the Joint Appendix have been included in an addendum to this brief, referred to as "ADD__".

for judgment as a matter of law on the fraudulent concealment claim, holding that it did not "have a sufficiently articulable basis in the evidence as presented thus far on theories presented to the jury to go to the jury as a separate claim." (A14852 at 2024:5-8.) Terra Firma's principal claim, for fraudulent misrepresentation, went to the jury. After deliberating for less than a day, the jury unanimously rejected Terra Firma's claim, finding Citi not liable. This appeal followed.

## COUNTERSTATEMENT OF THE FACTS

The facts set forth below are drawn from the record at trial and from the record of undisputed matters submitted in connection with Citi's motion for summary judgment.

### A.    The Parties

#### 1.    Terra Firma

Plaintiffs Terra Firma Investments (GP) 2 and Terra Firma Investments (GP) 3 (collectively, the "GPs") are part of a broader group of Terra Firma entities and are the general partners, respectively, of two Terra Firma funds.  (A46-47 at ¶¶ 18-19.)

Terra Firma is a private equity firm founded in 2002 by Guy Hands, an Oxford-educated businessman and Terra Firma's principal witness at trial.  (A13087-88 at 253:16-254:13; A13179-80 at 345:24-346:1.) Hands founded Terra Firma in 2002 after a successful career at Goldman Sachs and Nomura.  (A13179-80 at 345:6-346:1.)

Terra Firma is a "contrarian investor" (A18262 at 18264), which has, over the years, invested approximately $20 billion in equity capital in distressed companies.  (A47 at ¶ 20; A218.)  Plaintiffs are "investment management companies that are responsible, generally, for making all decisions concerning the various private equity fund partnerships

9

for which they serve as general partners." (A12504 at A12510, ¶ 6.) The GPs make investment decisions with input from the private equity firm chaired by Hands. (A14282-83 at 1448:19-1449:14.)

       2.   <u>Citi</u>

Defendants are a group of companies that comprise one of the world's largest global financial services company. (A12504 at A12510, ¶ 4.) The district court dismissed one of the defendants, Citigroup Global Markets Inc., at the close of Plaintiffs' case (A14648 at 1820:10-23; A14802 at 1974:12), a ruling that Plaintiffs do not appeal.

Citi's principal witness at trial, David Wormsley, is a senior banker who has been with Citi for over 25 years. (A14112 at 1278:8-14.) In 2007, Wormsley was the head of UK investment banking for Citi. (A14113 at 1279:11-12.)

**B.    Terra Firma Targets EMI**

Terra Firma explored the acquisition of EMI on several occasions between 1994 and 2007. (A18482-90; A13088 at 254:19-22.) In 2006, Terra Firma expressed its interest but was rebuffed by EMI. (A17512-13; A13220 at 386:13-23.) Terra Firma nonetheless continued its due diligence (A18491-92; A12980 at 146:5-25), and when EMI came on the auction block in May 2007, Terra Firma jumped at the opportunity. Terra

10

Firma gave the potential acquisition the code name "Project Dice." (A13404-05 at 570:25-571:1.)

Although Citi (led by Wormsley) and Deutsche Bank had acted as EMI's sell-side investment bankers during late 2006, for the 2007 auction, EMI's chairman decided to appoint as the lead, independent "Rule 3" adviser an investment bank that did not have any commercial relationship with the private equity funds that would be likely bidders for the company. (*See* A15667.)  EMI selected Greenhill & Co. to play that role and take the lead in negotiations with prospective bidders; Deutsche Bank and Citi (and, therefore, Wormsley) continued in a secondary capacity as sell-side advisers to the company.  (*See id.*; A14100-01 at 1266:14-1267:15.)  EMI cleared both Citi and Deutsche Bank to act also as buy-side financiers to the bidders for EMI.  (A13818-20 at 984:22-986:11.)

On May 6, 2007, Hands had a meeting with EMI's CEO, Eric Nicoli, during which Nicoli and Hands discussed Terra Firma's business plan, as well as information regarding other potential bidders—including the private equity firms One Equity Partners, Fortress, and Cerberus—that had each already submitted indicative, or non-binding, bids for the company. (*See* A16898-99.)  Hands instructed his team to prepare a memorandum to Terra Firma's Investment Advisory Committee (the "IAC") using the

11

information he had obtained from Nicoli, which persuaded Hands that there were "substantial upsides" to acquiring the company.  (*Id.*; A13158-60 at 324:25-326:4.)  Hands then compiled the top nine reasons why he wanted to "win" the EMI auction, the upsides of which he now viewed as "enormous." (A17088-89; A13236 at 402:2-12.)

Hands instructed his team to prepare an indicative bid of £2.65 per share.  (A16898-99.)  From that point forward, Terra Firma consistently targeted a final bid price of  £2.65—including on May 7, in a detailed memo to the IAC from the Terra Firma team (A16902-13); on May 15, in a similarly-detailed update to the IAC (A16916-22); and on May 18, when the IAC and the GPs met to discuss the potential acquisition (A16927-28; A17522; A15911-22).

### C.    Terra Firma Prepares a Bid for EMI

Hands's focus on winning the auction for EMI led him to instruct his team to be in a position to put in a fully-financed bid on May 14—well before the auction's then-target deadline of May 23.  (A17088-89; A13248-49 at 414:19-415:1.)  Terra Firma assembled a roster of advisers and consultants to assist it with preparing its bid,[2] and recruited a number of

---

[2]    Terra Firma engaged Dresdner Kleinwort, an investment bank, to advise it on the financial aspects of the EMI acquisition (A12990 at 156:15-23),

12

banks—Citi among them—to compete for a role in financing the approximately £2.5 billion of debt required for Terra Firma to complete the £4 billion transaction.  (A17088-89; A13031 at 197:1-10.)

As a condition of entering the bidding process for EMI, Terra Firma signed the Project Mulberry Agreement (the "PMA") setting out the conditions under which EMI and its advisers, including Citi, would supply information.  (A963.)  Paragraph 10 of the PMA provided that neither the parties to the PMA nor any of their "Connected Persons" (including Citi, as EMI's sell-side adviser) "shall have any liability to the other or any other person resulting from the use of Information by us or them" or "shall be under any obligation to provide further Information, to update Information or to correct any inaccuracies."  (A963 at ¶¶ 10(a)-(b).)  The sole exception was in the event of fraud.  (*Id.*)

Terra Firma then began a period of intensive work, including due diligence and financial analysis. (*See, e.g.*, A16902-13; A16914-15; A16916-22.)  Although May 14 proved to be an overly ambitious goal, Terra

---

McKinsey and Company to provide evaluations on the "cost improvement potential" available to Terra Firma (A17807 at 17811), L.E.K. and Enders, music industry specialists, to provide assessments of the future direction of the industry (A18491-92; A12981 at 147:1-7), KPMG to conduct financial analysis of EMI's performance (A16903), and Weil, Gotshal & Manges to conduct legal due diligence  (A12981-82 at 147:14-148:3).

13

Firma nonetheless continued its efforts to get a bid together as quickly as possible, now targeting May 18—five days before the May 23 deadline. (A16916 at A16917; A13257 at 423:7-24.)   To meet this aggressive schedule, Terra Firma needed to procure financing quickly, and none of the many banks with which it had been negotiating had yet committed to finance the full amount in that short timeframe.  (*See* A17068-69.)  Plaintiffs took steps to spur Citi, in particular, to "get the financing in place as quickly as" possible.  (A13260-61 at 426:25-427:7; A13262 at 428:15-19; A17069.)  On May 17, Citi agreed to finance the requested £2.5 billion needed for Terra Firma's bid.  (*See* A13266-67 at 432:21-433:9.)

On the morning of Friday, May 18, after reviewing a 160-page report detailing Terra Firma's business plans, assumptions, and extensive due diligence analyses, the IAC recommended the submission of a bid at £2.65 per share (A17552; A16927-28), a recommendation that the GPs approved that same morning (A15877 at A15880; A15911 at A15914).  The IAC and GP meetings recommending the £2.65 bid concluded before the first of the calls during which Wormsley is alleged to have relayed the Cerberus bid price and urged Hands to bid £2.65 to win the auction.  (*See* A13098 at 264:6-19; A18643 at A18658.)

14

**D.      Cerberus Withdraws from the EMI Auction**

On the evening of May 19, Cerberus notified Greenhill that it would not be submitting a bid for EMI.  (A13782-83 at 948:25-949:18.) Greenhill convened a conference call on May 20 to inform senior EMI executives of the Cerberus decision.  (A15364; A13784-85 at 950:24-951:23.)  Greenhill did not invite Wormsley to participate in that call (A15364), and he did not.  Wormsley did not learn that Cerberus had dropped out of the auction for EMI until after Terra Firma submitted its bid the following day.  (A13786 at 952:7-13; A13808-09 at 974:17-975:2; A14157-58 at 1323:5-1324:3; A14917 at 2089:10-14.)

**E.      Terra Firma Bids for EMI**

At 9:00 a.m. on May 21, 2007, Plaintiffs, on behalf of their acquisition vehicle, Maltby Limited, made a binding offer to purchase all of the shares of EMI at a price of £2.65 per share, "[o]n the basis of our due diligence." (A17001.)  The offer letter expressed Terra Firma's willingness to increase the price in the event of a competitive bid.  (*Id*.)  Indeed, the IAC had already recommended an increased bid of £2.85 per share, if required to win the auction.  (A16929-30.)  Terra Firma projected that it would earn a substantial return at the £2.65 bid price, estimating that its initial equity of

15

investment of £1.5 billion would increase in value to more than £4 billion in five years.  (A13019-20 at 185:18-186:4; A17552 at A17557.)

Less than three hours after Terra Firma submitted its bid, Hands received an email stating that the Financial Times had information that "Cerberus is out."  (A18255.)  Despite the claim in this litigation that Plaintiffs would not have bid had they known that Cerberus had dropped out of the auction, neither Hands nor anyone else at Terra Firma took any action upon receiving the FT report.  (A13486-88 at 652:23-654:24.)

Later that day, EMI's board met to discuss Terra Firma's offer.  (A15380.)  EMI recommended Terra Firma's offer to its shareholders that same day.  (A15389-90.)

## F.    The Three Conversations Comprising the Alleged Fraud

Plaintiffs claim to have been defrauded by statements Wormsley allegedly made in three conversations with Hands that purportedly took place between mid-morning on May 18 and approximately midnight on May 20.  According to Hands, each of these conversations consisted of a telephone call from Wormsley in which Wormsley stated that Cerberus intended to bid £2.62 on May 21, and that Terra Firma needed to bid £2.65 that day to win the auction.  (A13275-76 at 441:10-442:1; A13553

16

at 719:8-16; A13573-74 at 739:24-740:8; A13577 at 743:3-25; A13712 at 878:3-22.)

There is no dispute that Wormsley and Hands spoke on May 18. (A18643 at A18658; A18698.) The dispute at trial concerned the subject matter of that call.

Wormsley testified that he spoke to Hands on the 18th after receiving a call from Greenhill. (A13963-64 at 1129:15-23, 1130:2-19.) Greenhill's senior banker told Wormsley that Hands had claimed to have been advised by Wormsley that a bid of £2.40 would be sufficient to win the auction; Wormsley denied giving such advice. (A13963 at 1129:15-23.) Wormsley called Hands to complain about the false comment attributed to him. (A13964 at 1130:2-19.) Wormsley's recollection of the May 18 call is confirmed by an email he received later that day from Terra Firma's general counsel, acknowledging the "misunderstanding" between Hands and Wormsley on the subject of an offer at £2.40 per share. (A15359; *see also* A13051 at 217:6-12.)

The second of the three calls allegedly took place on Sunday, May 20, during a GP meeting in an aircraft hangar in Guernsey. Hands claimed that the call took place in the late afternoon that day, although the

17

minutes place the meeting earlier that afternoon.  (A13553 at 719:11-14; A17290; A17334.)

The evidence established that this call did not take place and Hands's testimony about it could not be credited. Wormsley's telephone records showed only two calls to Hands in the afternoon of May 20, each of which lasted approximately 30 seconds.  (A18643 at A18663; A18698.) Neither could be the call Hands described.  At the time Wormsley placed the calls, Hands was on his private jet en route back to England, where he landed approximately 30 minutes after the latter of the two calls made by Wormsley.  (A17758-59; *see also* A14670 at 1842:20-24.)  Hands's phone records show no other call with Wormsley that afternoon.  (*See* A17167 at A17184-85.)  Hands and Wormsley did not have the conversation about which Hands testified.  Nor is there any other documentary evidence of a call between Wormsley and Hands.  There is no reference to such a call in the notes taken during the GP meeting.  (A15970-72; A14361 at 1527:14-17.)  The minutes of the meeting, similarly, make no reference to a call—or any discussions at all with Wormsley.  (*See* A17290-92; A17334-36.)

The third call in which Hands claims to have received information concerning Cerberus from Wormsley took place at 11:53 p.m. on the evening of May 20.  (A18643 at A18663; A18698.)  Prior to this call,

18

Citi and Terra Firma had engaged in e-mail exchanges over a two-hour period about the financing for Terra Firma's bid.  (*See* A17293; A18537.)  Wormsley did not recall the substance of the call.  (A14153 at 1319:14-20.)  Following the call, Wormsley sent an email to Nicoli, relaying Wormsley's advice that Hands "should not play games on price."  (A15300.)  Wormsley testified that the reference related to Hands's game-playing on May 20, when Hands claimed to have learned from Wormsley that the EMI board would accept a price of £2.40.  (*Id.*; A14153-54 at 1319:14-1320:4.)  Neither Wormsley's e-mail to Nicoli, nor another contemporaneous email sent to one of Wormsley's Citi colleagues, makes any reference to Cerberus or a Terra Firma bid at £2.65.  (*See* A15300; A18540.)

## G.     Terra Firma Completes Its Acquisition of EMI

Plaintiffs conditioned their May 21 offer for EMI on achieving 90 percent shareholder acceptance by June 27, 2007.  (A17350 at A17373.)  Terra Firma reached that threshold and closed the transaction on August 1, 2007.  (A13076 at 242:15-19; A13476-77 at 642:19-643:3.)

## H.     Terra Firma Learns that Cerberus Did Not Bid

On September 24, 2007, a senior Terra Firma executive informed Hands that Cerberus "never actually submitted a formal offer" for EMI.  (A17208.)  As when he received the FT report about Cerberus on May

19

21, Hands took no action upon receiving information that contradicted the purportedly fundamental premise on which he authorized the EMI bid, that Cerberus intended to bid at £2.62.  (A13202-04 at 368:2-370:19.)  After receiving affirmation that Cerberus had not bid, Hands maintained his personal and professional dealings with Wormsley and others at Citi, and never once advised Wormsley or Citi that Wormsley had defrauded him into making the bid.  The first mention of Wormsley's alleged fraud occurred when Terra Firma filed this action in December 2009.  (*See* A18623; A18257; A18571; A18555; A19065; A18259; A14159-77 at 1325:1-1343:23.)

## SUMMARY OF ARGUMENT

This appeal follows a trial and swift jury verdict rejecting Terra Firma's principal fraud claim. That verdict is clearly supported by the trial record; indeed, Terra Firma does not contend otherwise. Instead, Terra Firma takes issue with a small number of the rulings below, specifically: (1) the district court's jury instructions on reliance; (2) the entry of summary judgment on Terra Firma's negligent misrepresentation claim on the ground that it was barred by a contractual waiver of liability; (3) judgment as a matter of law on the fraudulent concealment claim following Plaintiffs' abandonment of this theory at trial; and (4) the exclusion of two documents and a portion of expert testimony on damages.

None of these issues warrants reversal.

*First*, the district court correctly declined to instruct the jury that Terra Firma was entitled to a presumption of reliance. English law, similar to ours, holds that a presumption of the type at issue shifts the burden of going forward with evidence, not the ultimate burden of persuasion on a claim. Because Citi came forward with the requisite evidence, Judge Rakoff properly declined to instruct the jury on a presumption of reliance, rather instructing that Terra Firma had the burden of proving each element of its claim.

Nor did the trial court err by instructing the jury that Wormsley "acted with dishonest intentions, in that he intended that the Terra Firma plaintiffs would rely on the misrepresentation(s) to Citi's benefit and Terra Firma's detriment."   Plaintiffs concede that they were required to prove dishonest intention; they dispute only the "benefit/detriment" amplification. But Plaintiffs lodged no objection to this instruction; accordingly, the verdict may be reversed only on a finding that the inclusion of this language in the instruction constituted fundamental error.   No such finding could be made because the "benefit/detriment" language tracked the theory of fraud that Plaintiffs asserted from the filing of the complaint through closing arguments to the jury.

*Second*, the district court correctly granted summary judgment on negligent misrepresentation because Plaintiffs had contractually waived that claim.   The PMA exempted EMI and Citi from any liability, other than for fraud, based on information provided to Terra Firma in connection with its potential bid.   The negligent misrepresentation claim pled by Terra Firma fell squarely within the PMA's liability waiver.   In any case, Citi could not be found liable to Terra Firma because Citi owed Terra Firma no duty of care.

*Third*, the district court correctly granted judgment as a matter of law on Terra Firma's fraudulent concealment claim because no rational juror could conclude that Terra Firma had established the elements of that claim.  To do so, Terra Firma needed to prove that Wormsley made a representation to Terra Firma that was "true, or which [Wormsley] believed to be true" when made, but which later turned out to be false.  (Appellants' Br. (hereinafter "Br.") at 44.)  That was not the case that Terra Firma tried; rather, Terra Firma asserted throughout that Wormsley affirmatively lied concerning Cerberus and the price at which Terra Firma should bid.

*Fourth*, the district court did not abuse its discretion by excluding certain documents and expert testimony proffered by Terra Firma. The handwritten notes taken by Terra Firma's attorney contained triple hearsay.  Similarly, the district court acted within its proper exercise of discretion in excluding Nicoli's phone records because they had not been shown to Nicoli during his trial deposition.  Finally, Terra Firma's anemic effort to find fault in the trial court's exclusion of expert testimony concerning lost profits should be dismissed out of hand, because Judge Rakoff properly excluded the testimony as speculative and based on a fundamentally flawed methodology.

23

# ARGUMENT

## I.
## THE DISTRICT COURT CORRECTLY INSTRUCTED THE JURY ON RELIANCE

### A.      Terra Firma Was Not Entitled to an Instruction on the Presumption of Reliance

The trial court instructed the jury that Plaintiffs had the burden of proving "by a preponderance of the credible evidence . . . that Terra Firma did in fact rely on one or more . . . misrepresentations and that the misrepresentations were a substantial factor in causing Terra Firma to make the bid it made for EMI on May 21, 2007."  (A15284 at 2456:5, 20-23.) That instruction was correct.

Terra Firma's contrary argument—that the jury should have been instructed to presume reliance—is based on a misinterpretation of English law.  The presumption in English law, as the district court correctly concluded, put the burden on Citi to come forward with evidence that Terra Firma had not, in fact, relied on the alleged misrepresentations.  Once Citi rebutted the presumption—and the record plainly shows that it did—the burden shifted back to Terra Firma to prove that element of its fraudulent

misrepresentation claims by a preponderance of the evidence, precisely the instruction given by Judge Rakoff.[3]

Plaintiffs' attack on the jury instruction is rooted in their confusion about the distinction in English law between the burden of coming forward with evidence, the "evidential" burden, and the ultimate burden of persuasion on a claim.[4]  As a leading treatise states:  "An 'evidential burden' is not a burden of proof.  It determines whether an issue *should be left to the trier of fact*, while the 'persuasive burden' determines *how the issue should be decided*."  Colin Tapper, *Cross and Tapper on Evidence* p. 122 (12th ed. 2010) (ADD551 at 553) (emphasis in original); *see*, *e.g.*, *Sheldrake v. Dir. of Pub. Prosecutions* [2004] UKHL 43 at ¶ 1 (ADD462 at 463) (Lord Bingham) ("An evidential burden is not a burden of proof.  It is a burden of

---

[3]  Even under its incorrect reading of English law, Terra Firma has failed to show that it would have been entitled to an instruction on the presumption of reliance.  Terra Firma contends that the presumption arises "'if the misrepresentation is of such a nature that it would be likely to play a part in the decision of *a reasonable person*.'"  (Br. at 24 (quoting *Dadourian Group Int'l Inc. v. Simms* [2006] EWHC 2973 (Ch) at ¶ 543) (emphasis added).)  Terra Firma was thus entitled to no presumption unless it was reasonable for a sophisticated private equity fund to invest £4 billion on the basis of a statement by the other side's banker concerning a competing bid.

[4]  American law similarly distinguishes between the burden of producing evidence and the burden of persuasion.  *See* 2 *McCormick on Evidence* § 336 (Kenneth S. Broun et al. eds., 6th ed. 2006).

raising, on the evidence in the case, an issue as to the matter in question fit for consideration by the tribunal of fact.").

The distinction is well recognized in English case law and treatises. As a leading evidence text explains, once a party has come forward with evidence sufficient to meet its burden of production, "the effect will be as if the presumption had never come into play at all." Adrian Keane et al., *The Modern Law of Evidence* p. 651 (8th ed. 2010) (ADD574 at 576). At that point the burden of persuasion—which has never been shifted— remains with plaintiff to establish its claim. "Once the party who bears the evidential burden has discharged it by adducing evidence sufficient to justify consideration of a particular issue, it becomes necessary for the party bearing the persuasive burden on that issue, the proponent, to persuade the trier of fact that it should be decided in his favour." *Cross and Tapper on Evidence* p. 151 (ADD551 at 560).

Indeed, it would be inconsistent with English law to instruct a jury on the presumption of reliance in a civil case. The House of Lords specifically considered the application and effect of the presumption in the landmark case of *Smith v. Chadwick*, [1884] 9 App. Cas. 187 (ADD500). Lord Blackburn, with whom a majority of the court agreed, wrote:

> I think it not possible to maintain that [the presumption of reliance on a misrepresentation] is an inference of

26

> law. . . .  I quite agree that being a fair inference of fact it
> forms evidence proper to be left to a jury as proof that he
> was so induced.  But *I do not think that it would be a*
> *proper direction to tell a jury that if convinced that there*
> *was such a material representation they ought to find*
> *that the plaintiff was induced by it . . . .*

*Id*. at 196 (ADD509) (emphasis added); *see also St Paul Fire & Marine Ins.*

*Co. (UK) Ltd. v. McConnell Dowell Constructors Ltd* [1996] 1 All ER 96,

112 (ADD518 at 534) (reaffirming *Smith v. Chadwick*).

      The rule of *Smith v. Chadwick* is hornbook law in England.

*Halsbury's Laws of England* makes clear that reliance (which it calls

"inducement") is a fact which must be proved, not simply presumed by the

trier of fact:

> [B]oth inducement and materiality are prima facie issues
> of fact, and neither can be presumed as a matter of law.
> Inducement cannot be inferred in law from proved
> materiality, although there may be cases where the
> materiality is so obvious as to justify an inference of fact
> that the representee was actually induced; but, even in
> such exceptional cases, the inference is only a prima
> facie one, and may be rebutted by counter-evidence.

31 Lord Mackay of Clashfern, *Halsbury's Law's of England* ¶ 766 (4th ed.

2003) (ADD567 at 568); *see also*, *Pan Atl. Ins. Co. Ltd. v. Pine Top Ins. Co.*

*Ltd.* [1995] 1 AC 501, 570 (ADD369 at 438) (Lord Lloyd of Berwick)

(describing the view that reliance can be presumed as a matter of law as

27

"heresy" and noting that this view "has long since been exploded by, among others, Lord Blackburn in *Smith v. Chadwick*").[5]

Against this clear line of authority, Plaintiffs rely on the Court of Appeal's judgment in *Barton v. County Natwest* and a court of first instance judgment in *Dadourian Group International v. Simms*. If Terra Firma is suggesting that these cases articulate a different rule than *Smith v. Chadwick*, that is plainly wrong. The House of Lords' decision in *Smith v. Chadwick* remains good law and is binding authority on all English courts.[6] *Barton* follows *Smith v. Chadwick*, as is evident from the approving quotation of that portion of the judgment rejecting the argument that the jury should be instructed on a presumption of reliance. *Barton v. County Natwest* [1999] Lloyd's Reports 408, 421 (A8911 at A8924); *see also id.* ("the presumption is one of fact and capable, like any other such presumption, of being rebutted"). With respect to the "alteration in the burden of proving

---

[5] It is irrelevant that, as the district court noted, "there is no longer a right to jury in civil cases" in England. (A14203 at 1369: 6-7). For example, the 1996 case *St. Paul Fire & Marine Insurance Co. Ltd.* cited above, in which the Court of Appeal applied *Smith v. Chadwick*, was a non-jury case.

[6] "Decisions of the House of Lords are binding on every court inferior to it." 11 Lord Mackay of Clashfern, *Halsbury's Law's of England* ¶ 95 (5th ed. 2009) (ADD570 at 572).

28

inducement," *id.* at 422 (A8925), the *Barton* decision referred to the *evidential* burden of proof, not the ultimate burden of persuasion.[7]

In short, Terra Firma's argument regarding the presumption of reliance is based on a misreading of English law.

The English rule is completely consistent with American law, which holds that it would be incorrect to instruct a jury on a properly rebutted evidentiary presumption.[8] Federal Rule of Evidence 301 provides:

> In all civil actions and proceedings . . . a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but *does not shift to such party the burden of proof in the sense of the risk of nonpersuasion,*

---

[7]   In *Dadourian Group International*, the trial court judge, Justice Warren, referred to the presumption in passing but then noted that the question of reliance had to be decided "on a balance of probabilities on the whole evidence." *Dadourian Group Int'l Inc. v. Simms* [2006] EWHC 2973 (Ch) at ¶ 546 (ADD191 at 320).  To the extent Justice Warren's opinion suggests that the presumption somehow alters the burden of persuasion, it is contrary to *Smith v. Chadwick*, and is not an accurate reflection of English law.

[8]   Because English and American law reach the same result, this Court need not decide the choice of law question, which neither party briefed or argued below.  It is well established that "[t]he forum will apply its own local law in determining which party has the burden of going forward with the evidence . . . unless the primary purpose of the relevant [foreign] rule . . . is to affect decision of the issue rather than to regulate the conduct of the trial." *Otal Invs. Ltd. v. M.V. Clary*, 494 F.3d 40, 51 (2d Cir. 2007) (quoting Restatement (Second) of Conflict of Laws § 134 (1971)).

> which remains throughout the trial upon the party on
> whom it was originally cast.

Fed. R. Evid. 301 (emphasis added).  This is a codification of the "bursting bubble" theory of presumptions.   1 Michael H. Graham, *Handbook of Federal Evidence* § 301:1 (6th ed. 2006); 2 *McCormick on Evidence* § 344(A).[9]  The Rule 301 Advisory Committee's note elaborates that "[i]f the adverse party does offer evidence contradicting the presumed fact, the court cannot instruct the jury that it may *presume* the existence of the presumed fact from proof of the basic facts."  Fed. R. Evid. 301 advisory committee's note (emphasis in original).   Under Rule 301, therefore, a presumption "ceases to operate . . . upon the proffer of contrary evidence." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 148 (2d Cir. 2007).[10]  Thus, once

---

[9]  A "bursting bubble" presumption is one in which, "[i]f evidence is introduced sufficient to support a finding contrary to the existence of the presumed fact, the presumption is rebutted and has no further function at trial.  This determination is to be made by the court and not the jury."  1 Graham, *Handbook of Federal Evidence* § 301:1; *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988) (presumptions "are meant only to aid courts and litigants in arranging the presentation of evidence"); *United States v. Hendrix*, 542 F.2d 879, 882 (2d Cir. 1976) ("a true presumption is a procedural device, not evidence; and . . . when proof in rebuttal is introduced, the presumption is out of the case").

[10]  *See also In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004) ("If the party against whom the presumption is directed offers sufficient evidence to rebut or meet the presumption, that party discharges its burden of production, but the burden of persuasion remains where it was at the start." (internal quotation marks and citation omitted)); *A.C.*

the burden of production is met, the general rule is that "a jury should never be instructed in terms of a presumption." 1 Graham, *Handbook of Federal Evidence* § 301:1.[11]

At trial, Citi far exceeded its burden of coming forward with evidence sufficient to negate any presumption of reliance. Among other things, Citi demonstrated that Terra Firma:

- had performed extensive due diligence on EMI and performed complex financial modeling of the transaction (*see, e.g.*, A17552 at A17575);

- bid £2.65 "[o]n the basis of our due diligence" (A17001);

- expressed its determination to prevail throughout the auction process (*see, e.g.*, A17090-91; A17088-89; A15938);

---

*Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1037 (D.C. Cir. 1992) (Under Rule 301, "a presumption is not merely rebuttable but completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact.").

[11] Indeed, the Second Circuit has found error when the district court instructed the jury on the existence of a presumption in Title VII cases by describing the *McDonnell Douglas* burden-shifting scheme. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 758 (2d Cir. 2004) (holding that any inclusion of the *McDonnell Douglas* burden-shifting scheme within jury instructions "undoubtedly constitutes error because of the manifest risk of confusion it creates"); *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (finding reversible error because jury instruction including *McDonnell Douglas* framework raised issues of "burden shifting and pretext . . . that were simply not the province of the jury").

- consistently targeted a bid price of £2.65, and thought it could make a substantial profit purchasing EMI at that price (*see, e.g.*, A16898; A16902-13; A17092-100; A18495; A16916-22; A16927-28; A17552 at A17557; A15911-22; A16929-30; A17209 at A17219; A17001);

- approved a final offer price of £2.65 prior to the first call within which Wormsley allegedly made fraudulent statements concerning Cerberus and the price at which Terra Firma needed to bid (*see* A16927-28; A15911-22; A18643-70).

Given the substantial evidence that Terra Firma made an independent decision to bid, and did not rely on any alleged misstatements by Citi, any presumption of reliance "cease[d] to operate." *ITC Ltd.*, 482 F.3d at 148. None of the cases Terra Firma cites requires a contrary result.

Terra Firma's assertion that "[c]ourts regularly instruct juries on presumptions without any indication of confusion" (Br. at 28) is based on a misreading of the Supreme Court's decision in *Dick v. N.Y. Life Ins. Co.*, 359 U.S. 437 (1959). That case turned on a special presumption under North Dakota law concerning life insurance disputes:

> Proof of [insurance] coverage and of death by gunshot wound shifts the burden to the insurer to establish that the death of the insured was due to his suicide. Under North Dakota law, this presumption *does not disappear* once the insurer presents any evidence of suicide. Rather, the presumed fact (accidental death) continues and a plaintiff is entitled to affirmative instructions to the jury concerning its existence and weight.

*Id.* at 443 (internal quotations omitted) (emphasis added).

32

The presumption of English law with respect to reliance in a fraud case is precisely to the contrary.  And even under U.S. law, the result in *Dick* would be inconsistent with the subsequently adopted Rule 301, which explains that a presumption "does not shift . . . the burden of proof in the sense of the risk of nonpersuasion."  Fed. R. Evid. 301.

This Court's decision in *Black v. Finantra Capital, Inc.*, 418 F.3d 203 (2d Cir. 2005), also involves a special circumstance not present here.  *Black* involved a claim under Section 10(b), which, under the Supreme Court's decision in *Basic, Inc. v. Levinson*, provides for a presumption of reliance in fraud-on-the-market cases.  485 U.S. 224, 242-46 (1988).[12]  That presumption, which has no applicability in this case, is known as a "Morgan Presumption," because it alters the *burden of persuasion*.  *See* 1 Graham, *Handbook of Federal Evidence*, § 301:12 (explaining differences between Rule 301 (bursting bubble) and Morgan Presumptions); *duPont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987) (discussing how and why the presumption of reliance in securities cases "shifts the burden of persuasion").  The Supreme Court's *Basic* decision took pains to note that "[a]ctions under Rule 10b-5

---

[12]  Similarly, in the case of omissions, reliance on the omitted information may be presumed where such information is material.  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972).

33

are distinct from common-law deceit and misrepresentation claims." 485 U.S. at 244 n.22.

Nor can *United States v. McCombs*, 30 F.3d 310 (2d Cir. 1994), upon which Plaintiffs also erroneously rely, be analogized to this case. It turned on the unique issues relating to the presumption of correctness of government tax assessments. And courts addressing the presumption in such tax assessment cases have either noted the uncertainty of the law in such cases or have applied the presumption differently under Rule 301.[13]

Finally, even if the Court's instruction constituted error, Plaintiffs have failed to show any prejudice. The Court may reverse a jury verdict where there is an erroneous jury charge "only if [it is] persuaded 'that the error was prejudicial or the charge was highly confusing.'" *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 119 (2d Cir. 1999) (quoting *Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir. 1990)). In the circumstances here—where overwhelming evidence made clear that Terra

---

[13] *See United States v. Pomponio*, 635 F.2d 293, 297 (4th Cir. 1980) (noting that the effect of Rule 301 to the presumption in tax assessment cases "has not been mentioned or addressed" in cases decided after the effective date of the rule); *In re Associated Bicycle Serv., Inc.*, 128 B.R. 436, 444 (Bankr. N.D. Ind. 1990) ("After the introduction by the government of its assessment which is presumptively correct, the burden shifts to the taxpayer and if the taxpayer rebuts the presumption, it disappears, in which case the burden of proving the deficiency then reverts to the government.").

34

Firma did not rely on the alleged misstatements—any error with respect to instructing the jury on a presumption of reliance could not be prejudicial. *See, e.g.*, *Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.*, 327 Fed. Appx. 860, 866 (11th Cir. 2009) (holding jury instruction that insured had burden of proof with respect to whether it knowingly entered into cost-sharing agreement was harmless error because "it was clear from the evidence presented at trial that the cost-sharing agreements were entered into voluntarily").

### B.    The Benefit/Detriment Instruction Was Not a Fundamental Error

Terra Firma also claims that the trial court confused the jury by instructing that it needed to find that Wormsley, "in making one or more such misrepresentations, acted with dishonest intentions, in that he intended that the Terra Firma plaintiffs would rely on the misrepresentations *to Citi's benefit and Terra Firma's detriment*."  (A15284 at 2456:15-19 (emphasis added).)  In challenging an instruction to which it did not object at trial (A14997 at 2169:10-17), Terra Firma does not dispute its burden to prove that Wormsley "acted with dishonest intentions."  (Br. at 29.)  Rather, Terra Firma takes issue with this instruction only to the extent that Judge Rakoff illustrated the necessary elements of fraudulent misrepresentation by making reference to the benefit/detriment language.

35

This Court's review of the benefit/detriment language of the instruction is restricted to fundamental error. As this Court held in *Innomed Labs, LLC v. ALZA Corporation*:

> Where . . . a party has forfeited a challenge to an instruction by failing to object at trial, we review the instruction only for fundamental error. An error is fundamental if, in addition to contravening an established rule of law, it is so serious and flagrant that it goes to the very integrity of the trial. We may grant a new trial for fundamental error only if the charge deprived the jury of adequate legal guidance to reach a rational decision, or completely misled the jury as to the governing law.

368 F.3d 148, 155 (2d Cir. 2004) (internal quotations and citations omitted); *accord S.E.C. v. DiBella*, 587 F.3d 553, 569-70 (2d Cir. 2009). "[S]uch a 'fundamental' error must be even more egregious than the type of 'plain' errors that might suffice to excuse a procedural default in a criminal trial." *Shade v. Housing Auth. of City of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001).

Terra Firma cannot meet this standard. Under English law, a claim for fraudulent misrepresentation requires proof of "(1) a representation, which is (2) false, (3) dishonestly made, (4) intended to be relied on, (5) is in fact relied on, and (6) thereby causes damage." (Br. at 23.) Because the claim cannot be proven without damage, the argument that the trial court erred in instructing on detriment to Terra Firma is entitled to

36

little weight.[14]   And with respect to benefit, because the fraudulent misrepresentation claim requires proof that defendant *intended* that the plaintiff take that action, the benefit to the defendant serves as a proxy for intent.  *See Clerk & Lindsell on Torts* § 18-33 (20th ed. 2006) (ADD541 at 550) ("It is obviously a question of fact whether in a particular case a person was intended to rely on a false statement.  In practice, however, the test is often whether it was in the defendant's interest that he should do so.").[15]

Judge Rakoff's elaboration of the elements required under English law to prove a fraudulent misrepresentation claim was not error, let alone fundamental error.  Terra Firma argued throughout the case that Citi engaged in the purported fraud to enrich itself and to induce Terra Firma to

_____

[14] *See also* Spencer Bower, Turner & Handley, *Actionable Misrepresentation* § 132 (4th ed. 2000) (ADD536 at 538) ("How does a plaintiff in an action for deceit prove that the defendant intended to induce him to act *to his detriment* as he did?  This is normally done by proving that the misrepresentation was material." (emphasis added)).

[15] The two English cases Terra Firma cites deal with an entirely different question:  can one be held liable for a false statement where there is no evidence the speaker knew it was false and dishonestly intended to induce reliance?  Both held, not surprisingly, that in these circumstances there cannot be a claim for fraud.  *See Derry v. Peek* [1889] 14 App. Cas. 337, 376 (A4163 at A4202) (Herschell, LJ) (no liability if defendants "honestly believed what they stated to be a true and fair representation"); *Bradford Third Equitable Benefit Bldg. Soc'y v. Borders* [1941] 2 All ER 205, 211 (A4258 at A4263) (Viscount Maugham) ("I am unable to find any evidence to establish that the appellants knew that the statements in the brochure were untrue.").

37

bid at an inflated price.  Terra Firma first enunciated the argument in the

Complaint, alleging that that Citi and Wormsley deceived Terra Firma "to

chase ever increasing fees and income."  (A43 at ¶ 5; *see also* A73 at ¶ 131

("Citi intended to induce Terra Firma to submit a binding bid for EMI at a

price in excess of £ 2.62 per share, with the consequence that the bid would

succeed and that Terra Firma would have no alternative but to rely on Citi's

financing for the Acquisition[.]").)  Plaintiffs repeated the theme at closing:

> Mr. Wormsley expected to earn fees from this. Nothing
> wrong with earning fees.  But, he knew that part of his
> bonus depended on how much fees Citibank made on
> business that he was involved in.  They also knew, Citi
> and Wormsley also knew, that their position was getting
> marginalized at EMI.  They lost a big deal with EMI.

(A15170 at 2342:2-8.)

Terra Firma also alleged that it relied on Wormsley's alleged

misrepresentations to its detriment in submitting a bid for EMI.  (A83 at

¶ 171 ("Plaintiffs relied to their detriment on the material misrepresentations

made by Defendants to Plaintiffs in connection with Plaintiffs' purchase of

EMI.").)  At trial, Terra Firma opened on precisely that theory.  (*See, e.g.*,

A12889 at 55:14-24 (Terra Firma induced to bid and overpay as a result of

Citi's alleged misrepresentations).)   And Plaintiffs presented testimony

through, among others, Hands, designed to show that had it not placed the

bid, it would have been able to negotiate a better price for EMI:

Q. Now you say in that answer that up until that point you "had a hope that we would be in a situation of a busted auction and be able to negotiate price, due diligence, etc. on EMI." Why would a busted auction enable you to do that?

A. If you have a busted auction, a number of things happen. There is – the share price of the company normally falls quite substantially, the management team is in a situation where they have to negotiate with you, which means you get access to more information, the board is obviously very concerned because they have a – the issue of a company which is – had been put on the block and not been sold. So you – you enter into a prolonged, long period of discussions.

(A13568-69 at 734:20-735:6.)

This Court has consistently held that even an erroneous jury instruction on the law is not fundamental error in the absence of a showing that a corrected instruction would have changed the jury's understanding of the claim or its verdict. *See Innomed Labs*, 368 F.3d at 163 (refusing to grant a new trial where "it is impossible to conclude with any certainty that the erroneous charge had an effect on the outcome of [plaintiff's] claim"); *see also United States v. Parcel of Prop.*, 337 F.3d 225, 233-34 (2d Cir. 2003) (finding no fundamental error where appellant failed to explain how incorporating his proposed charge would have changed jury's understanding of the evidence necessary for the government to prevail).

Terra Firma comes nowhere near this high bar. Its argument that the district court's instruction "left the jury highly confused" (Br. at 31 (internal quotations omitted)) is easily swept aside; the instruction that the Court gave is precisely what Terra Firma asked the jury to find. That the jury reached a different result cannot make that instruction erroneous.

## II.
## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON TERRA FIRMA'S NEGLIGENT MISREPRESENTATION CLAIM

The district court properly granted summary judgment for Citi on Terra Firma's negligent misrepresentation claim because the undisputed facts demonstrated that Terra Firma contracted away its right to sue for negligence when it signed the PMA. Even if the PMA had not expressly waived the negligent misrepresentation claim, summary judgment still was warranted because of Plaintiffs' failure to come forward with any evidence to show that Citi owed them a duty of care.

### A. The Project Mulberry Agreement Forecloses Terra Firma's Negligent Misrepresentation Claim

The PMA set the terms under which EMI and Terra Firma would share information and limited the parties' liability resulting from the

40

provision of such information, other than in a case of fraud.[16]  Critically, the
PMA exempts from liability not only the signatories but also their respective
"Connected Persons," providing that neither "shall have any liability to the
other or any other person resulting from the use of Information by us or
them" or "shall be under any obligation to provide further Information, to
update Information or to correct any inaccuracies."  (A967.)[17]  Furthermore,
the PMA makes clear that "neither of us nor any of our respective Connected
Persons shall owe any duty of care to the other, to the other's Connected
Persons or to any other person."  (*Id.*)   Taken together, these provisions
prohibit any signatory (or its Connected Persons) from suing another
signatory (or its Connected Persons) for negligent misrepresentation.  As the
district court properly concluded, the PMA "plainly applies to any
information Wormsley passed on to Hands that was relevant to the potential
EMI acquisition."  (SPA160.)

---

[16]  As defined by the PMA, "Information" includes information "supplied by
each of us or by any of our respective Connected Persons orally, in
writing or in any other form to the other or its Authorised Recipients
whether before, on or after the date of this letter in connection with the
Proposal."  (A963.)

[17]  The PMA notes that "Connected Persons means, in relation to each of us,
to the extent that they are involved in or have knowledge of the Proposal
. . . (b) officers, employees and partners of our advisors, agents and
representatives or of their respective group undertakings."  (A963-64.)

Plaintiffs do not dispute that Citi acted as a Connected Person to EMI. (Br. at 37.) Terra Firma also concedes that "the PMA precludes Terra Firma from bringing a negligent misrepresentation claim against a Connected Person acting on behalf of EMI." (Br. at 39.) Plaintiffs nonetheless argue that the liability waiver of the PMA does not apply because Citi purportedly acted as a Connected Person of both EMI and Terra Firma. The argument should be as summarily dismissed by this Court as it was by the trial court because the PMA, on its face, does not condition immunity on a Connected Person's relationship with any other signatory. As the district court concluded:

> The suggestion that the liability waiver is contingent upon a determination that Wormsley was acting as a Connected Person of EMI "at the moment" the information was transferred is a nicety almost certainly not considered by the drafters of the PMA or relevant to its interpretation.

(SPA160.) Any other result would be illogical and defeat the entire purpose of the liability waiver provision, to prevent a bidder from bringing negligence claims against EMI and its advisors on the basis of information provided in the course of the auction.

Even if the PMA could, contrary to its plain language, be read the way Plaintiffs assert, there was no basis, at the summary judgment stage, to find that Citi and Wormsley acted as Connected Persons to both EMI and

42

Terra Firma at the time of the alleged misrepresentations.  Plaintiffs posit

three possibilities: Citi was "(1) an adviser to Terra Firma, (2) a pre-existing

investor in, and agreed debt provider to, Terra Firma, and (3) a partner of

Terra Firma (through holding direct limited partnership interests in the Terra

Firma Funds)."  (Br. at 37.)  None is sufficient to avoid the exculpatory

language of the PMA.

Terra Firma forfeited any argument that Citi acted as an adviser

or partner because it did not raise the argument in opposition to summary

judgment.  Terra Firma asserted only that the liability waiver should not

apply because Citi had acted as Terra Firma's Connected Person in its

capacity as investor or debt provider.  (Br. in Opp'n at 31, Sept. 7, 2010,

ECF No. 61.)  Terra Firma's newly minted adviser and limited partner

arguments cannot, therefore, provide a basis for reversal in this Court.  *See,

e.g.*, *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores,

Inc.*, 54 F.3d 69, 73 (2d Cir. 1995) ("[A] federal appellate court does not

consider an issue not passed upon below." (internal quotation omitted)).

Terra Firma's argument based on Citi's purported role as

investor and financing bank fares no better.  The information about

Cerberus's bid that Wormsley is alleged to have provided to Terra Firma

could have been obtained by Wormsley only in his role as adviser to EMI,

that is, as EMI's Connected Person.  That is precisely what Plaintiffs pled in the Complaint: "in providing Terra Firma with . . . information, Citi was acting w*ith the knowledge and approval of EMI*."  (A76 at ¶ 141 (emphasis added).)  In considering whether Terra Firma had raised a genuine issue of material fact, the district court was required to draw in Terra Firma's favor only those inferences that were "supportable by the record."  *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).  This theory, which contradicts Terra Firma's own pleadings, is not one.  For this reason, too, the trial court's decision to grant summary judgment should be affirmed.

Finally, Terra Firma argues that English law "requires contracts to be interpreted so as to achieve a 'commercially sensible construction.'" (Br. at 39 (quoting *Mannai Inv. Co., Ltd. v. Eagle Star* [1997] A.C. 749 at 771).)  We agree.  It is Terra Firma's interpretation of the PMA that lacks commercial sense, transforming the PMA into a patchwork scheme of immunity that would defeat its purpose:  to enable transacting parties and their advisers to provide information without risk of liability for negligence.

### B.    Plaintiffs Failed to Show that Citi Owed Plaintiffs a Duty of Care

The entry of summary judgment on the negligent misrepresentation claim would have been proper even in the absence of the protections of the PMA because Terra Firma failed to come forward with

evidence that Citi owed Terra Firma a duty of care, an essential element for a negligent misrepresentation claim under English law.[18]

Citi did not owe Terra Firma a duty of care. Although Citi provided Terra Firma with debt financing, it did so pursuant to an arm's-length agreement negotiated between sophisticated parties. (*See, e.g.*, A1020-35 (chronicling negotiations over Citi loan package).) Indeed, the agreements governing the parties' financing relationship expressly disclaim the existence of any fiduciary duties. (*See* A1845 at ¶ 32.4; A2034 at ¶ 29.4; A2201 at ¶ 29.4.)

English courts routinely decline to impose a duty of care upon parties engaged in similar arm's-length, commercial transactions. *See* McQuater Rep. ¶ 28 (A3325-26), citing *Bankers Trust Int'l v. Dharmala Sakti Sejahtera* [1996] CLC 518; *Titan Steel Wheels Ltd. v. Royal Bank of Scotland Plc* [2010] EWHC 211 (Comm) ¶¶ 93-95 (Steel, J.) (A5085 at

---

[18] Under English law, the elements of a negligent misrepresentation claim are: (i) that the representor assumed a duty of care in relation to the representee; (ii) that a representation was made by word or by conduct; (iii) that the representation was false; (iv) that the person making the representation breached his duty to exercise reasonable skill and care; (v) that the claimant reasonably relied upon the representation; and (vi) that the claimant suffered reasonably foreseeable loss as a result. *See* Report of Ewan McQuater QC ("McQuater Rep.") ¶¶ 23-24 (A3316 at A3324), citing *Hedley Byrne & Co Ltd v. Heller & Partners Ltd* [1964] AC 465; 33 *Halsbury's Laws of England* ¶ 614 (4th ed. 2002); *Cartwright on Misrepresentation, Mistake and Non-disclosure* 6.12 (2d ed.).

A5120-21). The case for finding such a duty is even harder where, as here, Terra Firma engaged its own advisers.[19] The absence of such a duty precluded a claim for negligent misrepresentation. *See* McQuater Rep. ¶ 24 (A3324), citing 33 *Halsbury's Laws of England* ¶ 614 (4th ed. 2002); *Cartwright on Misrepresentation, Mistake and Non-disclosure* 6.12 (2d ed.).

### III.
### THE DISTRICT COURT PROPERLY GRANTED CITI JUDGMENT AS A MATTER OF LAW ON TERRA FIRMA'S FRAUDULENT CONCEALMENT CLAIM

The district court entered judgment as a matter of law on Terra Firma's fraudulent concealment claim. That judgment is plainly correct. Terra Firma presented no evidence that would have allowed a jury to find for it on a claim requiring proof that Wormsley's statements to Hands concerning Cerberus: (i) were true, or believed to be true, when made; and (ii) subsequently discovered to be false, but not corrected. *See* Br. at 44; *see also Clerk & Lindsell on Torts* § 18-22 (19th ed. 2006) (A11118 at A11123-24); *Belfairs Mgmt. Ltd. v. Sutherland* [2010] EWHC (Ch) 2276 ¶¶ 10-11 (ADD134 at 140). To the contrary, Plaintiffs exclusively, if unsuccessfully, pursued a theory that Wormsley lied. (*See, e.g.*, A12887 at 53:1-7 ("That

---

[19] *See* McQuater Rep. ¶ 28(1) (A3325), citing *Clerk & Lindsell on Torts* § 8-101 (19th ed.); *McNaughton Papers Group Ltd v. Hicks Anderson & Co.* [1991] 2 QB 113 at 126.

was false.  He knew it was false."); A12888 at 54:11-17 ("That too was false. . . . That was the second lie on the 18th.").)  What the record shows is that, as Judge Rakoff concluded, Terra Firma minted the fraudulent concealment theory after the conclusion of the evidence by "searching wildly for facts to try to support" a theory that "was not in any practical way put before the jury."  (A14852 at 2024:3-4.)  Accordingly, the trial court properly entered judgment under Rule 50(a).  *See Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 277 (2d Cir. 1996) (judgment as a matter of law appropriate when "a reasonable jury could only have found for the [movant]").

Plaintiffs nonetheless assert that Judge Rakoff erred in taking the fraudulent concealment claim away from the jury.  But mere recitation of Terra Firma's convoluted arguments demonstrates why the trial court reached the correct conclusion in entering judgment as a matter of law.  Indeed, under Terra Firma's byzantine formulation, the jury would be required to find that Wormsley never lied to Hands but that Hands lied at trial about two of the three calls.

Specifically, Plaintiffs assert that a verdict could have been rendered in their favor if the jury had concluded that: (i) Wormsley believed the truth of the statement that he made to Hands on May 18 concerning the

47

Cerberus bid; (ii) the calls about Cerberus on May 20 did not occur (thereby disbelieving Hands's testimony about both conversations, *see, e.g.*, A13275-76 at 441:10-442:1); and, therefore, (iii) Wormsley violated his duty to correct his statement concerning Cerberus before Terra Firma submitted its bid on May 21 (thereby discrediting Wormsley's testimony that he did not learn about Cerberus's withdrawal prior to the Terra Firma bid, *see* A14157 at 1323:9-12).  (*See* Br. at 46.)[20]

And if that were not complicated enough, Terra Firma makes the alternative argument that the jury could have imposed liability on Citi if it concluded that Wormsley made all three statements believing that they were true, notwithstanding Wormsley's denial that he ever conveyed information about Cerberus's bid to Hands and Terra Firma's repeated argument that Wormsley lied in each of the three calls.  (Br. at 44-45.)

The short response is that Terra Firma pursued neither theory at trial, and adduced no evidence in support of either.  As Judge Rakoff

———————————————

[20]  As the district court correctly explained, Terra Firma has no claim for fraudulent *concealment* if Wormsley made an incorrect, but good faith statement on May 18, but then also made intentionally false statements on May 20.  (*See* A14849-50 at 2021:14-2022:6.)  If he made one or more of those statements knowing they were false, then Terra Firma's claim is for fraudulent misrepresentation (assuming, contrary to fact, that the other elements of the claim were met), a point that Terra Firma does not dispute on appeal.

correctly concluded, Terra Firma's case turned on the assertion that Wormsley lied in each of the three calls to which Hands testified.  (*See* A14851 at 2023:3-23.)   Hands, on both direct examination and cross-examination, maintained steadfastly that Wormsley made substantially identical misrepresentations to him in each call.  (*See* A13275-76 at 441:10-442:1; A13553 at 719:6-16; A13573-74 at 739:24-740:8; A13577 at 743:3-25; A13712 at 878:3-22.)   This was the centerpiece of Terra Firma's unsuccessful fraudulent misrepresentation claim, and as a result, Terra Firma never acknowledged the possibility that Wormsley told the truth, or at least had a good faith basis for any statement that he made concerning Cerberus.  (*See* A12886-87 at 52:24-53:5; A12888 at 54:11-17; A12890 at 56:15-25.)[21]

Even if Terra Firma *had* attempted to advance a concealment theory at trial, it could not have gone to the jury on the argument that the May 20 calls did not occur and that, therefore, Wormsley failed to correct his alleged misstatement of the 18th.  A party cannot escape judgment as a

---

[21]   In this appeal Terra Firma repeatedly describes its evidence in a way that is consistent only with fraudulent misrepresentation, not concealment, assailing the falsity of Wormsley's statements.  (*See, e.g.,* Br. at 5 ("misrepresentations[] which Wormsley knew to be false"); *id.* at 10-11 ("Wormsley had no honest belief in the truth of this false statement to Hands"); *id* at 16 ("Because Terra Firma bid for EMI in reliance on Wormsley's lies").)

matter of law by disputing his or her own sworn testimony.[22]  But that is precisely what would have been required of Terra Firma—to ask that the jury disbelieve Hands's testimony about two of the three calls with Wormsley.[23]  Judge Rakoff correctly concluded that Terra Firma could not go to the jury on such a claim.  *See Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108 (2d Cir. 1997) ("The jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice; its verdict must be reasonably based on evidence presented at trial." (internal quotation omitted)); *see also County of Suffolk v. Long Island*

---

[22]  *See, e.g.*, *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (summary judgment); *see also, e.g.*, *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) ("Summary judgment is called for where it clearly appears that the issues are not genuine, but feigned." (internal quotation omitted)); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)").

[23]  Terra Firma's reliance on this Court's decision in *Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001), is misplaced.  In *Girden*, the jurors were instructed that they could find in favor of the victim of an alleged sexual assault only if they concluded that events happened exactly as described in her trial testimony, during which the plaintiff recounted an attack that was more severe than the one she had initially reported.  That instruction was error, this Court concluded, because "[a] witness may say one thing on one occasion and because of human fallibility speak differently about the same event later.  Which version is believed is for the jury, not the judge, to decide."  262 F.3d at 199.  But Hands did not give two versions of events.  To the contrary, Hands testified consistently that all three calls took place, and that Wormsley had lied in each one.

*Lighting Co.*, 907 F.2d 1295, 1318-19 (2d Cir. 1990) (a party is not entitled to "unreasonable inferences" or inferences that require a "speculative leap" (internal quotation omitted)).

Terra Firma's alternate concealment theory—that Wormsley conveyed information in good faith in all three conversations but should have corrected that information when he learned on May 21 at the EMI Board meeting that Cerberus had not bid (Br. at 44-45)—provides no basis for reversal.

There is no dispute that the EMI Board meeting took place *after* the bid by Terra Firma (the Board met to consider the bid later that day, *see* Br. at 44).  That forecloses Plaintiffs' fraudulent concealment claim as a matter of law.  As Terra Firma's English law expert explained, Citi could be found liable for fraudulent concealment only if Wormsley learned that his statements were false *prior* to the time that Terra Firma placed its bid.  (*See* A8237-39 at ¶¶ 134-140.)   Accordingly, Citi would have had a duty to correct only "if they became aware, at any time before 9 a.m. on the morning of 21 May 2007, that Cerberus would or might not bid £2.62 per share." (A8238 at ¶ 139.)

Plaintiffs also argue that the jury could have found Citi liable for fraudulent concealment if it had concluded that Citi should have

51

disclosed the truth subsequent to the bid but prior to the closing of the transaction in August 2007.[24]  (Br. at 49.)  The argument should be rejected because it is inconsistent with English law and Plaintiffs' arguments below. Terra Firma asserted at trial that it could not back out of the transaction after it bid.  (*See* A12889 at 55:15-17; A12896 at 62:9-11; A13340-41 at 506:21-507:4.)  As a result, the jury could not have returned a verdict for Terra Firma on this theory of fraudulent concealment.  *See, e.g.*, *Tunnel, Inc.*, 988 F.2d at 354 (granting summary judgment on a claim that was inconsistent with the injured party's initial pleading and theory of the case in a related matter).

Finally, Terra Firma's fraudulent concealment claim fails for yet another reason:  Plaintiffs have not pointed to any evidence that would

---

[24]  Terra Firma points to two emails that purportedly prove a cover-up on Citi's part to conceal Citi's knowledge that Cerberus dropped out of the bidding.  But neither email provides any such proof.  The first is a Citi email sent on May 21 stating that there were two bids, a statement that, if anything, suggests Citi did *not* know Cerberus had withdrawn.  (*See* Br. at 49, citing A15309.)  The second is an e-mail sent months later that referred to Cerberus as "a bidder for EMI."  (*See* Br. at 49, citing A15305.)  But as Judge Rakoff observed, "the four or five words you are relying on . . . are too equivocal and too ambiguous to warrant a jury conclusion on the lines you are saying."  (A14658 at 1830:20-23.)  And at trial, Terra Firma offered quite a different explanation as to the import of these e-mails, claiming that they demonstrated consciousness of guilt with respect to Wormsley's alleged lies—not prior statements made in good faith.  (*See* A12894-95 at 60:4-61:15.)

satisfy the other necessary elements of the fraudulent concealment claim, including, specifically, that Citi acted dishonestly in failing to correct its alleged misstatement.  Terra Firma needed to show that Wormsley made a "conscious decision not to inform [Terra Firma] of the change in order to defraud [it]."  *Abu Dhabi Inv. Co. v. H. Clarkson & Co. Ltd.* [2007] EWHC 1267 (Comm) ¶ 232 (ADD1 at 112); *see also Slough Estates plc v. Welwyn Hatsfield Dist. Council* [1996] 2 EGLR 219, 236-37 (A10302 at A10319-20).  And although Terra Firma conclusorily asserts that Wormsley sought "to ensure that Terra Firma did not alter its plan based on the corrected information" (Br. at 45), it points to no evidence in support of that assertion. The absence of such evidence  provides another basis to affirm the district court's judgment.

## IV.
## THE DISTRICT COURT'S EVIDENTIARY RULINGS WERE CORRECT

Plaintiffs also complain about three evidentiary rulings:  the exclusion of a set of handwritten notes taken on May 16, the exclusion of phone records of EMI's Eric Nicoli, and the exclusion of expert testimony on lost profit damages.[25]  None of these rulings constitutes an abuse of

---

[25]  Plaintiffs also claim to have been subject to an amorphous "prejudice" during trial, purportedly exemplified by the district court's dismissal, on Citi's motion, of a juror after the court concluded that the juror had lied

discretion.  *See Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998) (discussing the "broad discretion" afforded the trial court to balance the Rule 403 factors and to exclude under that rule even evidence that is "relevant and otherwise admissible"); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) ("broad discretion" afforded the trial court to exclude evidence is "particularly true" with respect to Rule 403).

## A.  The District Court Properly Excluded Slattery's May 16 Notes Under Rule 403

Terra Firma contends that the trial court incorrectly excluded a page of handwritten notes taken by its in-house attorney, Michael Slattery. The portion of the notes identified by Terra Firma as relevant cryptically read:  "EMI . . . not to be repeated.  Worm . . . huge desire . . . intelligence[.] Wednesday . . . submit Friday, Mon/Tues make announcement."  (A19126 (ellipses in original).)  These notes purportedly reflect what "Mr. Pryce [Terra Firma's general counsel] told [Mr. Slattery] that Mr. Hands had told Mr. Pryce about what Mr. Wormsley had told Mr. Hands."  (A14386 at 1552:9-10.)  Plaintiffs concede hearsay but argue nonetheless that the notes

---

to the court. (*See* Br. at 16-18; *see also* A15099 at 2271:2-14.)  Plaintiffs dropped the juror's dismissal as a ground for appeal (Br. at 18), and there is nothing else to Plaintiffs' unfounded attack on Judge Rakoff's conduct of the trial.

should have been admitted to rebut Citi's accusations of recent fabrication. (Br. at 52.)  The argument has no merit.

Judge Rakoff recognized and acknowledged the non-hearsay use for which the notes were being offered, but correctly held that the jury "would inevitably take this conversation for its truth."  (A14382 at 1548:14-24; *see also* A14387-89 at 1553:18-1555:3.)  As this Court has held, "'[t]he mere identification of a relevant non-hearsay use of [the] evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice."  *United States v. Kaiser*, 609 F.3d 556, 572-73 (2d Cir. 2010) (quoting *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994)).

Judge Rakoff's ruling was not an abuse of discretion, particularly in light of the slight probative value of vague notes taken prior to the alleged fraud.  As the district court concluded:  "I think that [the evidence's] very limited probative value continues to be substantially outweighed by the high likelihood that the jury would . . . . take this for its truth, and I really don't think in this context any instruction from the court could overcome that problem."  (A14388 at 1554:7-12.)

Even if the trial court erred in excluding these notes, reversal is not required.  "An evidentiary ruling that is an abuse of discretion is . . . only

55

reversible if it also affects a party's substantial rights.  This occurs when, for example, a district court excludes a party's primary evidence in support of a material fact . . . ."  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224  (2d Cir. 1999) (citation omitted).  The exclusion of the notes cannot meet this high standard.  Plaintiffs' contrary argument—that the notes rebut Citi's assertion that Plaintiffs had no written corroboration of their claim (Br. at 55-56)—misses the mark.  The excluded notes, dating from May 16, provide no corroboration whatsoever of the three conversations that Hands claimed to have had with Wormsley between May 18 and May 20.

> ### B.      The District Court Properly Excluded Nicoli's Phone Records Under Rule 403

Terra Firma also assails the district court's exclusion under Rule 403 of the phone records of EMI's former CEO Eric Nicoli because Terra Firma had not shown them to Nicoli during his trial deposition.  (*See* A14780 at 1952:10-13; A14781 at 1953:19-22.)  The district court did not err in excluding those records.

Terra Firma sought to introduce the Nicoli phone records as the predicate for an argument that, because the records showed that Nicoli and Wormsley spoke twice on May 20, rather than only once as recalled by Nicoli, Nicoli must have informed Wormsley in the second conversation that

Cerberus had dropped out of the bidding for EMI.[26]  (A14780-81 at 1952:20-1953:18; A14783-84 at 1955:18-1956:5.)  Putting to one side the entirely speculative and impermissible nature of the inference that Plaintiffs sought to draw, Judge Rakoff had broad discretion to exclude evidence not put to the witness during a deposition intended to substitute for trial testimony.[27]

Nor, for purposes of Rule 403's balancing test, could there have been a permissible probative use of the phone records.  Not a single witness testified that Wormsley was told on May 20 that Cerberus had withdrawn.  To the contrary, all of the evidence confirmed Wormsley's recollection that he had not been so informed.  (*See* A13785-86, at 951:24-952:13; A13808-09 at 974:17-975:2; A14157-58 at 1323:5-1324:3; A14917 at 2089:10-14.)  The record, therefore, fails to provide any support for the inference that Plaintiffs sought to draw from the mere fact that a second call may have occurred.  *See Goldhirsh Group*, 107 F.3d at 109-10 (jury could not infer substance of communication from mere fact that call took place); *see also*

_____

[26]  Nicoli testified about the conversation that he did recall with Wormsley that day; he denied informing Wormsley that Cerberus had dropped out of the bidding.  (*See* A14917 at 2089:10-14.)

[27]  *See Manley v. AmBase Corp.*, 337 F.3d 237, 247-49 (2d Cir. 2003) (district court did not abuse its discretion in excluding at trial portions of a witness's discovery deposition, because the witness was not asked those questions at his later trial deposition).

*Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 312 (E.D.N.Y. 2008) (holding that plaintiff's assertions about the nature of certain phone calls were "pure speculation unsupported by any evidence").

### C. The District Court Properly Excluded Terra Firma's Speculative and Methodologically Unsound Expert Testimony

Terra Firma also argues that the district court erred in excluding expert testimony on lost profit damages.[28]  The district court had broad latitude in "deciding *how* to test an expert's reliability" and in deciding "*whether or not* that expert's relevant testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (emphasis in original).  Having determined that Plaintiffs' evidence was unreliable, the district court properly excluded it.

Plaintiffs' expert purported to calculate the profit that Plaintiffs would have earned between their 2007 purchase of EMI and the date of trial in 2010, had they never invested in EMI.  (A13591 at 757:5-24; *see also* CA630-631.)  But rather than analyze the rate of return actually earned by

---

[28] This Court need not reach this question because the trial court committed no error with respect to liability.  *Cf. Berner v. British Commonw. Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965) (holding that because judgment should be awarded to defendant, plaintiff's appeal regarding pre-judgment interest was moot) (citing *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851, 858 (2d. Cir. 1965)).

Plaintiffs in that period, the expert was instructed by counsel to calculate the combined annual returns of Plaintiffs and a related non-party fund for the wider period between 1995 and 2010. (A13589-91 at 755:21-757:2; A13596-97 at 762:19-763:10; *see al*so CA587-92; CA630.)

In response to Citi's motion to exclude this testimony, Judge Rakoff reviewed the parties' *in limine* submissions, conducted a lengthy Rule 104 hearing (A13588-643 at 754:1-809:9), and received further briefing and argument before ruling. (A14202-46 at 1368:2-1412:3.) On this record, the district court properly concluded that the proffered testimony was based on the wrong entities and the wrong period of time. (A14242 at 1408:14-21.) That ruling was indisputably within the discretion of the district court.

Unable to contest the trial court's proper exercise of discretion in excluding this unreliable expert testimony, Terra Firma points to a handful of English cases that discuss the availability of lost profits as a remedy for fraud. The argument is entirely beside of the point. English law prohibits lost profit damages when they are too remote or speculative. *Parabola Investments Ltd. v. Browallia Cal Ltd.*, [2010] EWCA Civ 486 ¶ 57 (ADD444 at 460). As the trial court concluded, that is precisely the case here.

## CONCLUSION

For the reasons set forth above, Defendants-Appellees respectfully request that this Court affirm the district court's order granting Citi's motion for summary judgment on Terra Firma's negligent misrepresentation claim; the district court's November 1, 2010 ruling granting Citi's Rule 50(a) motion for judgment as a matter of law on Terra Firma's fraudulent concealment claim; and the December 9, 2010 judgment dismissing Terra Firma's fraudulent misrepresentation claim on the basis of the jury's verdict.

Dated:  New York, New York
         July 25, 2011

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By _____/s/ Jay Cohen_____
            Brad S. Karp
            Theodore V. Wells, Jr.
            Jay Cohen
            John F. Baughman


1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:      bkarp@paulweiss.com
Email:      twells@paulweiss.com
Email:      jaycohen@paulweiss.com
Email:      jbaughman@paulweiss.com

*Attorneys for Defendants-Appellees*
*Citigroup Inc., Citigroup Global Markets Ltd., Citigroup*
*Global Markets Inc., and Citibank, N.A.*

61

**Certificate of Compliance With Federal
Rule of Appellate Procedure 32(a).**

Certificate of Compliance With Type-Volume
Limitations, Typeface Requirements and
Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,271 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Office Times New Roman 14-point font.

_____ */s/ Jay Cohen* _____
                Jay Cohen

Dated:  July 25, 2011